```
          UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF ALABAMA
                SOUTHERN DIVISION
```

```
AMERICAN INTERSTATE           )
INSURANCE COMPANY,            )
                              )
      Plaintiff,              )
                              )
vs.                           )   Civil Action No. CV-96-S-2336-S
                              )
BILLY BURNETT d/b/a BILLY     )
BURNETT CONSTRUCTION CO., and )
PRITCHETT-MOORE, INC.,        )
                              )
      Defendants.             )
```

## MEMORANDUM OPINION

This action is before the court on two motions for summary judgment. Plaintiff moves for summary judgment against all defendants on its claim for declaratory relief, and, on defendant Billy Burnett's counterclaim for bad faith refusal to pay. Defendant Pritchett-Moore, Inc. seeks summary judgment on the cross-claim asserted by codefendant, Billy Burnett. The only brief submitted by any party is Pritchett-Moore's brief in support of its motion for summary judgment. (Doc. No. 19.) Neither American Interstate Insurance Company nor Billy Burnett submitted briefs in support of, or in response to, the pending motions. Nevertheless, evidentiary submissions by all three parties have been thoroughly reviewed by the court. Upon consideration of the pleadings, Pritchett-Moore's brief, and the evidentiary submissions, this court concludes both motions are due to be granted.

### I.   SUMMARY OF FACTS

Plaintiff, American Interstate Insurance Company ("American"),

is a Georgia corporation with its principal place of business in Louisiana. Defendant Billy Burnett conducts business in Tuscaloosa, Alabama as "Billy Burnett Construction Company" ("Burnett"). Burnett applied for workers' compensation and employers liability insurance pursuant to the National Council on Compensation Insurance ("NCCI") assigned risk system through a Tuscaloosa, Alabama insurance agency, defendant Pritchett-Moore, Inc. Employers who are otherwise unable to obtain workers' compensation insurance for their employees are eligible to participate in state-sponsored assigned risk insurance pools. NCCI administers the assigned risk pool for several states, including Alabama.

American issued a policy of assigned risk insurance to Burnett on or about September 10, 1994. The initial premium was calculated on the basis of Burnett's representations about his estimated payroll and rate classifications for different types of work. Thereafter, Burnett reported the pay rate and type of work performed by each covered employee during periodic payroll audits, following which the premium was adjusted.

During one such audit conducted on October 18, 1995, Burnett provided a payroll register listing an employee named Martin Esposito as having been paid $3,600 for "cabinet work." An affidavit provided by Burnett stated "we do only restoration work which consists of interior work/cabinetry. We do not build any new structures." Based upon those representations, American charged

Burnett a premium of $16.97 per $100.00 of pay to cover Esposito. Esposito, however, was not employed to perform cabinet work; rather, Esposito was hired to supervise a sewer installation project in Florida. That fact allegedly was not disclosed to American at the time of the audit.

While working on the Florida sewer project, Esposito slipped and fell into a trench. Burnett filed a "First Report of Injury" during August of 1995, stating that Esposito was superintendent on a job in an unspecified location at the time of his injury. Burnett reported the date of injury as July 25, 1995. As part of its routine investigation into the claim, American interviewed Esposito, who said he was an independent contractor installing sewer pipe in a trench on a job site in Florida when he injured his neck and back. It is undisputed that Esposito was a Florida resident working in that State on the date of his injury. American denied coverage for Esposito's injury, asserting that Burnett's policy covered only Alabama residents.

Subsequently, Esposito filed a workers' compensation action against Burnett in Florida. Burnett notified Pritchett-Moore of the suit and requested legal representation. After an initial refusal and delay of several weeks, American retained Florida counsel to represent Burnett in the Florida action. Esposito's claim ultimately was settled before trial.

American commenced this action on September 6, 1996, seeking a declaratory judgment that it had no duty to provide a defense to,

3

or coverage for Esposito's claim against Burnett, based upon the following asserted facts: Burnett's policy does not cover injuries to Florida residents working on a job located in Florida; Burnett misrepresented Esposito's trade classification, resulting in an incorrect premium; and, Esposito was an independent contractor, not an employee, and thus was not covered under the policy issued to Burnett.[1]

Burnett filed an answer, counterclaim, and cross-claim on October 6, 1996. His counterclaim against American asserts a claim for bad faith refusal to pay, based upon his allegation that his payment of the premium for Esposito's workers' compensation coverage and American's acceptance of that premium resulted in an implied contract of coverage, and for negligent failure to defend. Burnett also asserts a cross-claim against Pritchett-Moore, alleging that the agency's delay in retaining counsel to represent Burnett in the Florida workers' compensation action filed by Esposito amounted to negligence.

American moved for summary judgment on its claim for declaratory relief, and as to Burnett's counterclaim for bad faith refusal to pay. Pritchett-Moore also moved for summary judgment, asserting it is not liable to Burnett, because Burnett never requested workers' compensation insurance to cover Florida

---

[1] By order entered February 5, 1997, this court dismissed the claims against Martin Esposito. (See Doc. No. 15.)

4

residents performing work in Florida.[2]

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Id.* In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to

---

[2]Although Pritchett-Moore's motion and brief repeatedly refer to the "plaintiff," their argument addresses only Burnett's cross-claim for negligence. The court thus construes Pritchett-Moore's references to "plaintiff" as references to Burnett, the cross-claimant, and treats the motion as addressing only that cross-claim.

5

the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its burden, "the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992)(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

"'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513). Even so, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

### III. DISCUSSION

A. **American's Motion for Summary Judgment**

American moves for summary judgment on its claim for declaratory judgment, and as to Billy Burnett's counterclaim for

6

bad faith refusal to pay.

1.  **Declaratory judgment**

The initial question presented by American's motion is whether American had a duty to provide workers' compensation coverage to Burnett for work performed in Florida by a Florida resident. Such a duty could arise either from an express or implied contract of insurance.

American presents the affidavit of Zonie Harris, its vice president in charge of claims, who avers that Burnett's application for workers' compensation insurance reveals that he sought coverage only for work to be performed in the states of Alabama and Georgia, not Florida.[3] (Plaintiff's Attachment 2, exhibit 1.)

Indeed, even if Burnett had requested workers' compensation coverage for work to be performed in the State of Florida, his application would have been denied, because Florida does not participate in the NCCI system. (See Plaintiff's Attachments 2 & 3.)

Additionally, the policy ultimately issued to Burnett for the relevant period states on its declaration sheet that coverage existed only for work performed within the State of Alabama. (Id., exhibit 2.) The "Coverage" section of the policy's declaration sheet states:

> A.  Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of

---

[3]Burnett's application for coverage in Georgia was rejected because he had no work in Georgia at the time of his application. (See Plaintiff's Attachment 5.)

7

>     the states listed here:
>         AL [Alabama]
>
> ...
>
> C.  Other States insurance. Part Three of the policy
>     applies to the states, if any, listed here:
>         NONE[4]

The abbreviation "AL" and the word "NONE" are typed onto the printed form. (*See* Plaintiff's Attachment 9 at 9.)

Clearly, therefore, the policy issued to Burnett did not cover injuries to persons performing work for Burnett on the Florida sewer project. Thus, no duty to provide a defense to, or coverage for Esposito's workers' compensation claim arose from the express terms of Burnett's policy.

Even so, Burnett presents his own affidavit averring that "American Interstate Insurance Company audited the policy and demanded a premium be paid for Martin Esposito prior to his injury. This premium was paid. It was clear from the records supplied to the auditor that the job was in Florida." (*Id.* ¶ 4.) Thus, Burnett appears to be suggesting American's alleged duty to provide coverage for Esposito's injuries arises from an implied contract, based upon American's acceptance of that premium.

Under Alabama law, however, "[a] party cannot recover under an implied contract theory where an enforceable express contract exists between the parties regarding the same subject matter." *Miles v. Tennessee River Pulp and Paper Co.*, 862 F.2d 1525, 1529

---

[4]See note 3 *supra*.

8

(11th Cir. 1989)(*citing Humphrey v. Boschung*, 47 Ala. App. 310, 253 So.2d 760, 764 (1970), *aff'd*, 287 Ala. 600, 253 So. 2d 769 (1971)). Plainly, an enforceable contract existed between American and Burnett regarding workers' compensation insurance coverage. The terms of that express contract provided no coverage for work performed in Florida.

Moreover, "[a]n implied contract ... arises only where there are circumstances which show a mutual intent to contract." *Miles*, 862 F.2d at 1528-29 (citing *Broyles v. Brown Engineering Co.*, 275 Ala. 35, 151 So. 2d 767, 770 (1963)). American could not have intended to provide workers' compensation insurance to Burnett for work performed in Florida, because the unrebutted evidence establishes that such coverage was not available through NCCI. Based on that evidence, the court declines to find an implied contract of coverage.

Additionally, American asserts that the premium for Martin Esposito was paid only <u>after</u> Esposito was injured, and even then was calculated based upon an incorrect job classification provided by Burnett. (*See* Plaintiff's Attachment 3 at 2, and Attachment 4 at 2 (listing Esposito's type of work as "cabinet").) Burnett presents no evidence to refute those contentions. It is undisputed that Esposito worked on a sewer installation project, and performed no cabinetry work. Thus, even if American's acceptance of a premium payment for Esposito created an implied contractual duty, such a duty could not have arisen until the premium was actually

9

paid, and it only could have covered Esposito for injuries received while he performed cabinet work. American cannot be liable to provide coverage for an injury which occurred before its duty to cover arose, or for an injury which occurred within an entirely different and undisclosed job classification. *Gillilan v. Federated Guaranty Life Insurance Co.*, 447 So. 2d 668, 671 (Ala. 1984)(holding that an "insurance policy is not complete until the minds of the parties have met and they arrive at an understanding of the terms of the agreement"). Although Burnett might have assumed his Florida employees were covered under the policy issued by American, his assumption does not make it so, particularly in the face of overwhelming evidence that American never intended to provide coverage for work performed outside the State of Alabama. Accordingly, declaratory judgment is due to be entered in favor of American.[5]

### 2. Bad faith refusal to pay

For the same reasons, Burnett's counterclaim asserting bad faith refusal to pay also is due to be dismissed. The elements of such a claim are:

> (a) an insurance contract between the parties and a breach thereof by the defendant;
>
> (b) an intentional refusal to pay the insured's claim;

---

[5] Although American names Pritchett-Moore as a defendant in this action, the complaint seeks no declaration of rights as to Pritchett-Moore. The court assumes Pritchett-Moore was included only for the purpose of insuring the involvement of all necessary parties to this action. Accordingly, the court finds American has stated no claim, and is due no relief, against Pritchett-Moore.

10

> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
>
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
>
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*National Savings Life Insurance Co. v. Dutton*, 419 So. 2d 1357, 1361 (Ala. 1982). This case turns on the third element: "(c) the absence of any reasonably legitimate or arguable reason for" the refusal. As elaborated by the *Dutton* court, Burnett

> must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
>
> The "debatable reason" under (c) above means an arguable reason, one that is open to dispute or question.

*Dutton*, 419 So. 2d at 1361. This court already has determined that American had legitimate reasons for refusing to provide coverage for Esposito's injury. Accordingly, Burnett's claim for bad faith refusal to pay is due to be dismissed.

### 3. Negligent failure to defend

Burnett also asserts in his <u>cross</u>-claim that <u>American</u> was negligent in failing to provide him with a timely defense in the Florida action filed by Esposito. That allegation, properly styled a <u>counter</u>claim, is not mentioned in American's motion for partial summary judgment or its accompanying brief. Nevertheless, the

11

court has thoroughly reviewed the entire record, evidentiary submissions of all parties, and relevant legal authority, and finds the issue ripe for decision.

Under Alabama law, "[a]n insurer's duty to defend can be more extensive than its duty to pay." *Blackburn v. Fidelity and Deposit Company of Maryland*, 667 So. 2d 661, 668 (Ala. 1995)(quoting *Universal Underwriters Ins. Co. v. Youngblood*, 549 So. 2d 76, 78 (Ala. 1989)). The parameters of that duty are "determined by the language of the insurance policy and by the allegations in the complaint giving rise to the suit against the insured." *United States Fidelity & Guaranty Co. v. Armstrong*, 479 So. 2d 1164 (Ala. 1985). Thus, this court looks first to Burnett's policy to determine the extent of American's duty to defend. The workers' compensation section of the policy states:

> C.   We Will Defend
>
> We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.
>
> <u>We have no duty to defend a claim, proceeding or suit that is not covered by this insurance</u>.

(Plaintiff's Attachment 9 at 3.) As noted above, this court already has determined that the insurance policy issued to Burnett by American did not obligate American to provide workers' compensation coverage for Esposito's injuries. Thus, under the unambiguous terms of his policy, Burnett's claim for negligent

12

failure to defend also is due to be dismissed.

B.  **Pritchett-Moore's Motion for Summary Judgment**

Pritchett-Moore's motion addresses only Burnett's cross-claim. Pritchett-Moore misconstrues that claim, however, as one for negligent failure to procure insurance.[6] Read more carefully, Burnett asserts that Pritchett-Moore negligently failed to provide him with a defense to Esposito's Florida lawsuit until after the deadline for answering and asserting defenses had passed. (See Cross-claim ¶ 8: "Mr. Burnett alleges that Pritchett-Moore, Inc. and American Interstate Insurance Company were negligent in that they failed to provide Mr. Burnett with a defense, failed to notify them of their inaction, and the consequences thereof.")

Based upon this court's determination that American owed Burnett no duty to defend against Esposito's lawsuit, it follows that Pritchett-Moore also owed Burnett no duty to defend him against Esposito's claims. Indeed, any such duty could only have arisen from Burnett's insurance policy. *United States Fidelity & Guaranty Co. v. Armstrong*, 479 So. 2d 1164 (Ala. 1985)(duty to defend is "determined by the language of the insurance policy"). Initially, the court notes that Pritchett-Moore is not a party to the subject insurance contract. In any event, the plain language

---

[6] So construed, Burnett's claim would fail because he admittedly never discussed or requested workers' compensation insurance for Florida residents performing work in Florida. See Pritchett-Moore's Exhibit A at 90-91, 111-13, 152, 155; see also Southern Scales, Inc. v. Aronov Ins., Inc., 608 So. 2d 724, 725 (Ala. 1992)(affirming summary judgment on negligent failure to procure insurance claim where plaintiffs "never requested the kind of coverage they now contend they should have received" and "the possibility of obtaining such insurance coverage was never a topic of discussion").

13

of the policy belies any duty to defend which arises from "a claim, proceeding or suit that is not covered by this insurance." (Plaintiff's Attachment 9 at 3.) Accordingly, Pritchett-Moore's motion is due to be granted.

## IV. CONCLUSION

For the foregoing reasons, American's motion for summary judgment is due to be granted. Defendant Pritchett-Moore's motion for summary judgment also is due to be granted. An order and judgment consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this **10th** day of July, 1998.

*[signature]*
United States District Judge

14